

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| LARRY MASON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No.  CV-04-S-2696-NW |
| | ) | |
| ROYAL OAK ENTERPRISES; | ) | |
| SAM'S WHOLESALE CLUB, | ) | |
| STORE NO. 8196; | ) | |
| | ) | |
| **Defendants** | ) | |

## MEMORANDUM OPINION

Plaintiff, Larry Mason, asserts claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") against defendants Royal Oak Enterprises ("Royal Oak") and Sam's Wholesale Club ("Sam's").  He bases federal jurisdiction on satisfaction of the requirements of the diversity statute, 28 U.S.C. § 1332.[1]  Defendants jointly moved for summary judgment on all of plaintiff's claims.[2]  Upon consideration of defendants' motion for summary judgment, plaintiff's response, and the parties' evidentiary submissions, the court concludes the motion should be denied.

---

[1]The parties are of diverse citizenship, and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).

[2]Doc. no. 26.

## PART ONE

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

## PART TWO

### *Statement of Facts*

Plaintiff purchased a bag of "Instant Light" charcoal briquettes from a Sam's Wholesale Club store in Florence, Alabama.  Defendant Royal Oak Enterprises, the entity that manufactured the briquettes,[3] printed the following warning on the front of the bag in which the briquettes were packaged:  "CAUTION: COMBUSTIBLE. READ SIDE PANELS CAREFULLY."  The bag's side panel stated: "CAUTION COMBUSTIBLE: KEEP AWAY FROM HEAT AND OPEN FLAME. CONTAINS PETROLEUM DISTILLATES. STORE IN A WELL VENTILATED AREA. KEEP BAG CLOSED TO AVOID EVAPORATION.  KEEP OUT OF REACH OF CHILDREN."  The back of the bag contained the following instructions:

### EASY START INSTRUCTIONS

1.    Remove cooking grill.  Stack briquets into a pyramid on charcoal rack.
2.    Light briquets in several places with a match or butane charcoal lighter.  DO NOT USE LIGHTER FLUID OR ELECTRIC OR CHIMNEY STARTERS.  NEVER USE GASOLINE.

---

[3]*See* doc. no. 1 (complaint), at 2; doc. no. 33 (plaintiff's evidentiary submission), Exhibit B (excerpts from the deposition of Larry Mason), at 34-35.  "Instant Light" charcoal briquettes are treated with a chemical compound which eliminates the need to use lighter fluid in lighting the briquettes.  *See* Mason Deposition, at 38, 98.

3

3.    Allow coals to become uniformly covered with white ash or exhibit a slight glow.
4.    Spread briquets out evenly over coal bed.  Replace grill.

**GRILL SAFETY**

Make sure grill area is well ventilated and at a safe distance from fences, overhangs and shrubs that could ignite from sparks and flare-ups.  Never barbecue indoors with this product!

Do not cover grill until flames die down.  Accumulated fumes could cause a flare-up when cover is removed.

Never add Instant Lighting 60% Larger Charcoal Briquets to a lighted fire.  Only add original 60% Larger Charcoal Briquets.

Use flame-retardant, insulated mitts to move hot grates and grills, and long-handled utensils to handle food.

Never leave grill unattended.  Keep children away from hot grills.[4]

Plaintiff stored the bag of briquettes in a closet inside his home until using them on September 12, 2002, to ignite a fire for grilling steaks on his barbecue grill.[5] While carrying the unopened bag of briquettes to the outdoor grill, plaintiff dropped it on the ground, causing the bag to split open and several briquettes to fall to the ground.  Plaintiff immediately picked up the bag and finished carrying it to the grill.[6] He then reached into the bag, scooped out two double-handfuls of briquettes, and

---

[4]Doc. no. 33 (plaintiff's evidentiary submission), at Exhibit D (emphasis in original).

[5]Doc. no. 28 (defendants' evidentiary submission), Exhibit D (excerpts from the deposition of Larry Mason), at 37*; see also* doc. no. 1 (complaint), at ¶ 5.

[6]Doc. no. 33 (plaintiff's evidentiary submission), Exhibit B (excerpts from the deposition of Larry Mason), at 87-89.

placed them in the opened grill.[7]  He stacked the briquettes in a pyramid formation.[8]

Then, without adding lighter fluid, he attempted to light the pyramid at one of its

lower corners with a disposable cigarette lighter.  He held the lighter to the briquettes

for approximately ten seconds.  The briquettes began to smoke, but they did not

ignite.  Plaintiff withdrew the lighter from the briquettes for a brief period of time,

then reapplied the lighter flame to the bottom corner of the charcoal pyramid.  The

briquettes instantly exploded in flame and set the front side of plaintiff's body on

fire.[9]  Plaintiff suffered burns over approximately 20% of his body, including severe

burns on his hands, which had been covered with residue from the briquettes.[10]  He

went to his local hospital's emergency room, and subsequently was transferred to the

Burn Center at the University of Alabama in Birmingham, where he stayed

approximately three weeks, incurring substantial medical bills.[11]

Plaintiff filed this suit on September 10, 2004.[12]  For his claim under the

AEMLD, he states:

---

[7]*Id.* at 37-38.

[8]*Id.* at 90-91.

[9]*Id.* at 99-102.

[10]*Id.* at 101, 106; *see also* Complaint, at ¶ 7.

[11]Doc. no. 33 (plaintiff's evidentiary submission), Exhibit B (excerpts from the deposition of Larry Mason), at 108; *see also id.* at Exhibit C (Invoice from the University of Alabama at Birmingham Hospital).

[12]*See* complaint.

15.     Plaintiff would state that the Defendants were negligent in manufacturing, constructing, designing, formulating, preparing, assembling, testing, warning, instructing, marketing, packaging, and/or labeling of the charcoal briquettes made the subject of this action which proximately resulted in injury to the Plaintiff herein.

16.     Plaintiff would further state that the Defendants herein breached the implied warranty of fitness for its intended purpose with respect to the charcoal briquettes sold to the Plaintiff in that said briquettes were not manufactured, constructed, designed, formulated, prepared, assembled, and tested such that the same were fit for their intended purpose.  As a proximate consequence of the breach of said implied warranty the Plaintiff suffered the injuries and damages stated herein.

17.     Plaintiff would further state that the Defendants are guilty of violations of Ala. Code § 6-5-521 as stated therein.[13]

18.     As a proximate consequence of the breach of the Alabama Extended Manufacturer's Liability Doctrine the Plaintiff was caused to suffer the following injuries and damages:

(a)     Plaintiff suffered severe burn injuries as stated above.  He was caused to suffer much pain, suffering,

---

[13]Alabama Code § 6-5-521 states:

(a) A "product liability action" means any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based upon (1) negligence, (2) innocent or negligent misrepresentation, (3) the manufacturer's liability doctrine, (4) the Alabama extended manufacturer's liability doctrine as it exists or is hereafter construed or modified, (5) breach of any implied warranty, or (6) breach of any oral express warranty and no other.  A product liability action does not include an action for contribution or indemnity.

(b) The definition used herein is to be used for purposes of this division and is not to be construed to expand or limit the status of the common or statutory law except as expressly modified by the provisions of this division.

embarrassment and humiliation as a result of the injuries he sustained.

(b)    Plaintiff was caused to incur large doctor bills, drug bills, hospital bills, physical therapy bills, and other medical expenses in and about his efforts to minimize, heal and/or cure the injuries and damages suffered by him;

(c)    Plaintiff was caused to be both temporarily and permanently injured for the remainder of his natural life.

19.    Plaintiff further alleges and avers that all of his injuries were the proximate consequence of the defective and unreasonably dangerous condition of said charcoal briquettes within the meaning of the Alabama Extended Manufacturer's Liability Doctrine.[14]

Plaintiff demands judgment in an unspecified amount of money exceeding $75,000.

Plaintiff plans to offer no expert testimony to support his claims.[15]

## PART THREE

### *Discussion*

The AEMLD is a judicially created products liability doctrine. *See Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.,* 395 So. 2d 991 (Ala. 1981); *Casrell v. Altec Indus., Inc.,* 335 So. 2d 128 (Ala. 1976).  It is a modified version of strict liability that premises liability upon the sale by a manufacturer of a defective product.  To establish a prima facie case against a manufacturer under the AEMLD, a plaintiff must show that (1) the defendant manufacturer sold a defective product, (2) the defect was the cause in fact of the plaintiff's injury and is traceable to the defendant, and (3) the product reached the plaintiff without substantial modification to the condition in which it was sold. *Sears, Roebuck,* 395 So. 2d at 994.

---

[14]Complaint, at ¶¶ 15-19.

[15]*See* doc. no. 24 (plaintiff's Withdrawal of Identification of Expert).

*Goree v. Winnebago Industries, Inc.,* 958 F.2d 1537, 1540-41 (11th Cir. 1992). Defendants assert that summary judgment must be entered in their favor because plaintiff does not have sufficient evidence that the charcoal briquettes he used were defective, or that any existing defect caused his injuries.

The theory of plaintiff's case is that the charcoal briquettes were defective, negligently designed and manufactured, and unreasonably dangerous, because there was too much flammable fuel in the charcoal.[16] Defendants presented two documents to rebut plaintiff's theory.  The first, an affidavit by Jim Hayes, Area Vice President for Royal Oak, states:

> Royal Oak used a medium petroleum distillate as the lighting component of the subject product.  The medium petroleum distillates used by Royal Oak in its Sam's Choice charcoal since the mid-1990's have had similar properties and have conformed to South Coast Air Quality Management District (SCAQMD) standards.  The percentage of medium petroleum distillate used in the Sam's Choice product has not changed since Royal Oak began manufacturing the product.

> The charcoal product at issue in this case was manufactured with tolerances within reasonable and accepted industry standards.  The subject product was not defective or unreasonably dangerous.[17]

The second document, an expert report from Laurel V. Waters, a forensic scientist with Analytical Forensic Associates in Lilburn, Georgia, states:

---

[16]*See* doc. no. 28 (defendants' evidentiary submission), Exhibit B (plaintiff's answers to defendants' interrogatories), at ¶¶ 3, 4; *see also id.* (plaintiff's supplemental responses defendants' interrogatories), at ¶ 4.

[17]Doc. no. 28, Exhibit E (Affidavit of Jim Hayes).

8

Based on my education, training and experience, and my review of the deposition of the plaintiff, the records of Forensic and Scientific Testing, Inc. and Applied Technical Services, Inc., and the Affidavit of Jim Hayes, my opinion, to a reasonable degree of scientific certainty, is that (1) the charcoal product at issue in this case contained a medium petroleum distillate; (2) medium petroleum distillates are commonly used as charcoal starters; (3) the reason that medium petroleum distillates are commonly used by the charcoal industry is because of its [sic] relative low volatility when used in normal circumstances; (4) medium petroleum distillates are safer to use than most other ignitable liquids; and (5) based on the fact that Mr. Mason attempted to light the Sam's Choice charcoal briquettes for approximately 10 seconds indicates that the subject briquette was not overly saturated with the medium petroleum distillate.  Thus, it is my opinion that the level of medium petroleum distillate in the subject charcoal briquettes was reasonably safe.[18]

In light of this evidence, defendants argue that plaintiff cannot support his defect and causation theories under the AEMLD without the aid of testimony from his own expert witness.

Under the AEMLD,

the "[f]ailure of a product does not presuppose the existence of a defect."  The fact that someone was injured while using a product does not establish that the product was unreasonably dangerous when put to its intended use. *Thompson v. Lee,* 439 So. 2d 113 (Ala. 1983); *Sears, Roebuck & Co. v. Haven Hills Farm, Inc.,* 395 So. 2d 991 (Ala. 1981); *Casrell v. Altec Industries, Inc., supra.*  Proof of an accident and injury alone is insufficient to establish fault under the AEMLD. *Thompson v. Lee, supra.*  Rather, because the AEMLD is a fault-based cause of action, the plaintiff must prove more than the fact that an injury occurred while using the product. *Casrell v. Altec Industries, Inc., supra.*  Under the AEMLD, the plaintiff must affirmatively show a defect in the

---

[18]Doc. no. 28, Exhibit F (report by Laurel V. Waters).

9

product. *Id.* . . . .  Necessarily, then, the test is met only by a showing that the product's failure of performance is causally related in fact to the product's defective condition at the time of its sale.  "*The evidence and testimony likely to prove the defect* — that which rendered the product not fit for its anticipated use — *and the defect's link to the Defendant, depend upon the nature of the facts; but, ordinarily, expert testimony is required because of the complex and technical nature of the commodity.*"

*Brooks v. Colonial Chevrolet-Buick, Inc.,* 579 So. 2d 1328, 1332 (Ala. 1991) (emphasis and bracketed alterations in original).  Thus, if the product at issue is particularly "complex and technical" in nature, expert testimony may be required "in order to present evidence from which a lay jury may reasonably infer that a defective condition of the product was the cause of the product's failure and the cause of the resultant injury to the plaintiff."  *Id.*  "If, however, under all the attendant circumstances, *absent expert testimony*, the jury could reasonably infer from the product's failure of performance that a defective condition caused the injury," expert testimony will not be required to support the plaintiff's case.  *Id.* (emphasis supplied) (citing *Sears, Roebuck, & Co.,* 395 So. 2d at 995).

Thus, the relevant question *in this case* is whether the proper level of lighter fuel in the charcoal briquettes used by plaintiff is such a complex and technical matter that a lay jury could not discern the existence of a defect without the benefit of expert testimony.  The court concludes it is not.

10

The cases cited by defendants are distinguishable, in that they involve product defects which are more complex and technical in nature than an explosion of fire from charcoal containing too much lighter fluid.  In *Brooks,* for example, the allegedly defective product was a set of brakes on a car which failed, causing the plaintiff to suffer injuries in an automobile accident.  *Brooks,* 579 So. 2d at 1329-30.  The Alabama Supreme Court held that the allegedly defective brake system was sufficiently complex as to require expert testimony, stating:

> an automobile brake system is composed of, among other parts, calibers, rotors, discs, rear wheel cylinders, brake shoes, and master cylinders; it is a system composed of parts that would not be familiar to the lay juror, and the lay juror could not reasonably be expected to understand that system and determine if it was defective, without the assistance of expert testimony.  In essence, it is a system that appears to be precisely the type of complex and technical commodity that would require expert testimony to prove alleged defect."

*Id.* at 1333.  The *Brooks* court also stressed the fact that the plaintiffs themselves had no knowledge of the operation of an automobile brake system, and had produced no evidence besides their own testimony to support the existence of a defect.  *Id.*

Similarly, in *Sears, Roebuck & Co.,* the Alabama Supreme Court held that expert testimony was required to support the plaintiff's claim that a tire purchased from defendant "blew out" because it was defective, causing loss to plaintiff's property.  *See Sears, Roebuck & Co.,* 395 So. 2d at 993, 996.  The issue of causation

11

was too complex to be decided without expert testimony, because, as the court stated,

> [t]he mere fact of a tire blowout does not demonstrate the manufacturer's negligence, nor tend to establish that the tire was defective. Blowouts can be attributed to myriad causes, including not only the care with which the tires are maintained, but the conditions of the roads over which they are driven and the happenstance striking of damaging objects.

*Id.* at 996. *See also Cook v. Sunbeam Products, Inc.,* 365 F. Supp. 2d 1189, 1191-92 (N.D. Ala. 2005) (holding that the issue of whether an electric blanket was defective, causing a fire that killed the plaintiff, required expert testimony); *Cooper v. Toshiba Home Tech. Corp.,* 76 F. Supp. 2d 1269, 1276 (M.D. Ala. 1999) (holding that the design and manufacture of a kerosene heater was sufficiently complex and technical as to require expert testimony to demonstrate a product defect).

In contrast, although the court could find no other case law on "exploding charcoal," it concludes the circumstances surrounding plaintiff's injuries in this case are more analogous to those presented in cases where expert testimony was not required. For example, in *Interstate Engineering, Inc. v. Burnette,* 474 So. 2d 624 (Ala. 1985), the Alabama Supreme Court considered whether to require expert testimony in a case involving an allegedly defective heat detector in a bedroom of the plaintiff's home. The heat detector failed to signal an alarm during a house fire, and the plaintiff alleged that, as a result, her son was unable to escape the home before he

passed away from carbon monoxide inhalation. *Id.* at 625-26. The court acknowledged that expert testimony *usually* is required in a products liability case, but concluded the case before it was an exception to that general rule. *Id.* at 627-28. The evidence showed that the plaintiff had properly installed, tested, and maintained the heat sensor, and that the sensor otherwise had been left undisturbed. Thus, even in the absence of expert testimony, the plaintiff's case was not based solely on "speculation and conjecture." *Id.* at 627. Instead, "the tendencies of the evidence . . . point[ed] to one theory of causation, namely, that the heat sensor within the Vanguard heat detector was defective and was defective when [the defendant] released the product into the stream of commerce." *Id.* Thus, even though the defendant proffered alternative explanations for the heat sensor's failure, there was sufficient evidence, without the aid of expert testimony, to support the conclusions that the sensors were defective, and that the defects caused the plaintiff's son's death. *Id.* at 628. *See also Goree,* 958 F.2d at 1541-42 (expert testimony was not required to show the exact cause of the alleged defect, when the plaintiff had produced sufficient evidence to show the product was unreasonably dangerous); *Buckley v. General Motors Corp.,* No. 98 Civ. 4366(BSJ), 2004 WL 725933, *3-*4 (S.D. N.Y. April 2, 2004) (expert testimony not necessary to show "that a vehicle should neither veer nor lean to one direction if the driver is not steering in that direction, that a

vehicle should slow down when the brake is applied, and that a vehicle should not roll over under normal driving conditions" because "such a conclusion is within the common knowledge of a juror"); *Klein v. Hyster Co.,* 255 A.D. 2d 425, 426-27 (N.Y. App. Div. 1998) (expert testimony not required to show a causal connection between an allegedly defective retaining pin in a forklift and the plaintiff's injuries, because only "an understanding of the facts surrounding the accident" was necessary for the jury's analysis); *Morgan v. Compugraphic Corp.,* 675 S.W. 2d 729, 733 (Tex. 1984) (expert medical testimony not required to show causal connection between the plaintiff's illness and leaking chemicals from an office machine, when the plaintiff's testimony established "a strong, logically traceable connection between the event and the condition"); *Virgil v. Kash N' Karry Service Corp.,* 484 A.2d 652, 656 (Md. 1984) ("Expert testimony is hardly necessary to establish that a thermos bottle that explodes or implodes when coffee and milk are poured into it is defective.").

Here, plaintiff has offered evidence to the following effect: he used charcoal briquettes manufactured and distributed by defendants to light a fire in a grill (their intended purpose); the briquettes did not light, but instead exploded in flame, setting his hands and body on fire; and, he suffered injuries as a result. This evidence tends to point to the theory that the briquettes were defective, even without the support of expert testimony. It should be within the common knowledge and understanding of

14

an ordinary juror that charcoal briquettes do not ordinarily explode into flame when lit, and that the flames resulting from the alleged explosion caused plaintiffs' injuries. Therefore, expert testimony will not be required to show that the briquettes were defective, or that there was a causal connection between the alleged defect and plaintiff's injuries.[19]

Additionally, the court does not agree with defendants that, by his failure to offer expert testimony, plaintiff has conceded all statements made by defendants' expert.   Even if defendants' assertion were true, however, the statements of defendants' expert would not be sufficient to warrant the entry of judgment as a matter of law in defendants' favor.  Defendants' expert stated only that the chemical used in defendants' charcoal briquettes is commonly used in the charcoal industry because it has relatively low volatility, and that the fact that plaintiff attempted to light the briquettes for ten seconds with no success indicates the briquettes were not overly saturated with fuel.  These statements do not conclusively establish that the briquettes plaintiff used were safe for their intended purpose, or that they suffered from no defect which caused plaintiff's injuries.

---

[19]This is not to say that plaintiff's testimony will be sufficient to withstand a motion for judgment as a matter of law at the close of plaintiff's case at trial, or that a jury will find plaintiff's testimony particularly persuasive when compared to that of defendants' expert.  The court notes there also exist substantial fact issues with regard to product alteration and misuse, as well as plaintiff's contributory negligence and assumption of risk.

# PART FOUR

## *Conclusion*

Based on the foregoing, the court concludes there are genuine issues of material fact warranting the submission of this case to a jury.   Accordingly, defendants' motion for summary judgment will be denied.   An appropriate order will be entered contemporaneously herewith.

DONE this 17th day of July, 2006.

_____

United States District Judge

16